## HALL v. SOUTH CAROLINA RAILWAY CO.

1. In action by a passenger against a railway company for ejecting him from its train after tender of the sum at which tickets were sold, and while on his way to a point beyond the State limits, the

report of the railroad company fixing rates was admissible in evidence, there being testimony that those rates had been accepted and acted upon by the company.

2. The Railroad Commission of this State cannot regulate passenger fare to a point in another State, but a regulation as to the hours for opening the ticket office is not a matter of inter-State commerce.

3. There being some evidence upon all the points necessary to plaintiff's case, the Circuit Judge erred in granting a non-suit.

Mr. Justice McIver *dissenting.*

Before FRASER, J., Aiken, April, 1885.

This was an appeal from an order of non-suit. In granting the order the Circuit Judge made the following remarks:

From the little time I have had to consider the authorities relied on by the plaintiff, I do not see that I am bound by these decisions out of the State. It seems to me that the decisions relied on are not founded upon a correct view of the relations of these employees to the railroad company and each other; although the decisions quoted are from eminent sources. What may be the rule ultimately adopted, I am not able to say; but if that rule is adopted which is contended for, it would amount to a virtual repeal of all the rules of the railroad company requiring passengers to buy tickets at places where tickets are sold. Take, for instance, a train with fifty or a hundred passengers, none of them having tickets and ignoring the regulations of the railroad company. The conductor would be called upon, at his peril or that of the company, either to pass them over the road or to put them out, and in that case the regulations would be of no avail, as there would be no practicable way of recovering the ten cents (as in this case) back again.

I do not think that the rule cited in those cases ought to be the rule in this State. The application for the ticket ought to have been made within office hours, and if the railroad company advertises its office hours from six until ten, as in this case, I think that the application for the ticket ought then to have been made. I think that if the train passed out of office hours, the ticket should have been purchased previously.

Again, this was a ticket for a ride from Aiken to Augusta. It is true that Augusta is just across the Savannah river, but the

principle is just the same whether it was outside of the State a half mile or a hundred and fifty miles, and whether it was to Augusta or to Atlanta, neither the State nor the railroad commission had a right to regulate inter-State travel any more than they have a right to regulate inter-State commerce. This purchase of a ticket, which I think is established to be one of the rules of the company, was merely one of the incidents of the trip from here to Augusta, and the commission had no more right to regulate the ticket than the fare itself.

I think the case might as well be reviewed by the appellate tribunal at this point as at any other, and I will grant the non-suit.

*Mr. G. W. Croft*, for appellant.

*Messrs. Henderson Bros.*, contra.

November 22, 1886. The opinion of the court was delivered by

MR. CHIEF JUSTICE SIMPSON. The plaintiff, being a passenger on the South Carolina Railway, travelling from Aiken, in this State, to Augusta, Ga., was ejected from the train by the conductor of defendant company; for this the action below was brought, demanding $2,000 damages. In the course of the trial he offered in testimony the 5th annual report of the railroad commission, to show the rates allowed to charge passengers, and also to show the regulations requiring railway companies to have their depot open a reasonable time before the departure of the trains. This testimony was ruled incompetent, and therefore was excluded. At the close of plaintiff's testimony, the defendant moved a non-suit, which was granted. The appeal raises but two questions: 1st. Was the testimony referred to above, to wit, the report of the railroad commission, properly and legally excluded? 2d. Was it error to grant the non-suit?

The complaint alleged, in substance, that the price of a ticket from Aiken to Augusta was fifty-five cents; that he was unable to procure a ticket at Aiken, where he boarded the car, on account of the negligence of the ticket agent in not having the office

opened in time ; that when the conductor called for his fare he tendered fifty-five cents, the ticket price, informing the conductor that, the office not being open, he could not get a ticket before leaving Aiken.  The conductor refused the tender and demanded sixty-five cents, which the plaintiff refusing to pay, he was ejected.

His honor, Judge Fraser presiding, held the report of the commission incompetent testimony—we suppose upon the ground that the commission having no right to regulate inter-State commerce, and the plaintiff being on his way from a point in this State to a point in Georgia, its regulations could have no application here, as this was a case governed by the doctrine of inter-State commerce.  Doubtless, this is a case involving inter-State commerce in some of its aspects, as that doctrine applies as well to the transportation of passengers as of goods, and the railroad commission had no authority to fix rates for passenger fare from Aiken to Augusta.  See 22 *S. C.*, 236.  But even an unconstitutional act, when adopted and acted upon by a party with reference to whom it has been enacted, may be binding upon such party.  See *Hand* v. *S. & C. R. R. Co.*, 21 *S. C.*, 179.

Now, the allegation of the complaint was that the ticket price between these points was fifty-five cents, and the object of the testimony offered was to show that this price was established by the railroad commission as a matter of fact, which seems to have been followed up by evidence from the ticket agent that that was the price adopted by the company.  This agent said: "I sold tickets to Augusta for fifty-five cents, sir.  That was after the rates had been inaugurated and fixed by the railroad commission, I believe."  So whether the action of the commission was legal and binding on the company or not, yet if the company adopted the regulation made, and held it out to the community as the rate charged, until changed parties would have the right to demand a compliance therewith.  In this point of view, we think this testimony should have been admitted as a statement of a fact, having more or less bearing upon the merits of the case, as the judge in his judgment might determine in the further progress of the case, and which he could explain in his charge.

But if we are wrong here, that portion of this report which referred to regulations in reference to having the depot open a

reasonable time before the departure of trains, we think was competent, under the principle of *Munn* v. *Illinois*, 94 *U. S.*, 135, the case of the grain elevator erected in Chicago; also *The State Tax Case*, 15 *Wall.*, 293, where it was said: "That it is not everything that affects commerce that amounts to a regulation of it within the meaning of the constitution. The warehouses of these plaintiffs in error are situated, and their business carried on exclusively within the limits of the State of Illinois. They are used as instruments by those engaged in State as well as those engaged in inter-State commerce, but they are no more necessarily a part of commerce itself than the dray or cart by which, &c. * * * Incidentally they may become connected with inter-State commerce, but not necessarily so. This regulation is certainly a thing of domestic concern * * *."

And in the *Railroad Commissioners* v. *Railroad Company*, 22 *S. C.*, 236, this court said: "It may, as we think, also be taken as settled that, as a general rule, each State may control, as a matter of domestic concern, all railroads and other things, proper subjects of public control, which are located entirely within the borders of the State, although such regulating control may affect incidentally general inter-State commerce, with which the subject may connect"—citing *Munn* v. *Illinois*, *supra*. Now, here the depot at Aiken was entirely within this State, its regulation was of domestic concern, and as far as we can see now, the regulations were not illegal; at least, this does not seem to us to have been so certain as to exclude the testimony offered. It should have been admitted subject to the charge of his honor.

But independent of these questions, did not the plaintiff have enough testimony to prevent a non-suit? The issues were: 1st. The price of a ticket between the points mentioned. 2d. That plaintiff was prevented from obtaining a ticket by the negligence of the company. And, 3d. That he was ejected after offering the ticket price and explaining to the conductor why he failed to procure a ticket. These were the material issues, and necessary to plaintiff's action. Was there a total absence of evidence as to any one of these points? If not, then the case should have gone to the jury. As to the first point, it makes no difference how the company come to establish a ticket price at fifty-five

cents; whether under the direction of the railroad commission or not. If it was established, and the community so informed by the company, whether this was upon its own judgment or by the illegal direction of the commission, passengers had the right to act upon it until changed. So that the only question as to this was, had a ticket price been established, as alleged, at fifty-five cents? Certainly there was some evidence on this point. We think, too, there was evidence as to the allegation that plaintiff was not furnished an opportunity to procure a ticket on account of negligence—weak it may be, but still some evidence which had to be weighed, the province of the jury. And there was evidence also that plaintiff was ejected, after full information of all the facts connected with the failure of the plaintiff to get a ticket, and after a tender of the ticket price. Under these circumstances we think the case was a proper one for the jury.

It is the judgment of this court, that the judgment of the Circuit Court be reversed, and the case be remanded for a new trial.

MR. JUSTICE MCGOWAN. I concur. Common carriers, from the nature of their vocation, are bound to transport all persons who pay or offer to pay the established fare. For their own convenience they sometimes require a ticket to be purchased in advance, and to insure compliance with the requirement they charge a higher rate of fare if the ticket is not so procured. I assume that such regulation is allowable, on condition, however, that the company, from which alone tickets can be secured, affords an opportunity to purchase a ticket in advance. If no such opportunity is afforded, and a ticket cannot be purchased in advance, it seems to me that the company could not resort to the extreme course of ejecting a passenger, only for the reason that he had not complied with a rule which they had made it impossible for him to do. Whether such opportunity was afforded the plaintiff was a question of fact. There was some evidence upon the subject, and the question is whether it was "pertinent, competent, and relevant to the fact in dispute." It seems to me that there was some such proof, and therefore the case should have been

submitted to the jury.    *Davis* v. *C. & G. R. R. Co.*, 21 *S. C.*,
93; *Couch* v. *R. R. Co.*, 22 *Id.*, 561.

MR. JUSTICE McIVER, *dissenting.* It seems to me quite clear,
under the case of *Railroad Commissioners* v. *Railroad Company*,
22 *S. C.*, 220, that the railroad commissioners had no right to
establish the rate of fare which should be charged for transport-
ing a passenger from the town of Aiken, in South Carolina, to
the city of Augusta, in the State of Georgia, and therefore that
the report of the railroad commissioners was incompetent evidence
for any purpose in this case and was properly ruled out.    While
it may be true that the railroad commissioners may be invested
with power to regulate the hours for opening the ticket office of
a railroad company, so as to afford passengers a reasonable time
for the purchase of tickets, so far as travel within the State is
concerned, I do not see how such a regulation can be allowed to
affect inter-State travel, and hence the report of the commission-
ers was certainly irrevelant even for the purpose of showing the
depot regulations, in a case like this, where the rights of an inter-
State passenger are in question.    It seems to me, therefore, that
there was no error in excluding the report of the railroad com-
missioners.

The next inquiry is, whether the non-suit was properly refused.
The defendant undoubtedly had a right to eject the plaintiff from
the train if he refused to pay a reasonable compensation for his
passage when demanded.    The plaintiff certainly did refuse to
pay the compensation demanded of him—sixty-five cents—but,
as he alleges in his complaint, he tendered "the sum of fifty-five
cents, which was a reasonable and just fare or toll for said pas-
senger, and which was the fare as fixed under the law," which
the defendant's agent refused to accept.    Now, as we have seen
that the amount of the fare could not be fixed by the railroad
commission, and as it is not shown that the amount of such fare
is fixed by defendant's charter, it is quite clear that the amount
tendered could not be "the fare as fixed under the law;" and the
only question is, whether there was any evidence that the amount
tendered was "a reasonable and just fare" for the transportation
of plaintiff by that train from Aiken to Augusta.    I am unable

to find any evidence upon that point.    Certainly no witness has undertaken to say what would be a reasonable and just fare,

It is argued, however, that the testimony of the agent, Wigfall, that at that time the regular passenger fare from Aiken to Augusta was fifty-five cents, and that he sold tickets at that rate, together with the fact testified to by the plaintiff, that about ten days afterwards he was charged only fifty-five cents on the same train, was evidence tending to show that such was a reasonable and just fare, and therefore the question should have been left to the jury. I cannot so regard it, for it will be seen that the witness, Wigfall, was testifying to "the regular passenger fare," and not to what was a reasonable compensation for transporting a passenger from Aiken to Augusta, and that his testimony was that he sold tickets at fifty-five cents after the rates had been fixed by the railroad commission, which pretty clearly indicated that this amount was charged, not because it was a reasonable and just fare, but merely in compliance with a regulation which, though unauthorized, the company did not care to contest.

It will further be observed that the train from which the plaintiff was ejected was not advertised as a passenger train, and so far as appears from the evidence, no tickets were ever sold for that train at Aiken, as it passed that point at a very early hour, before the agent was required to open the office.   Hence the fact that tickets by the regular passenger train were sold for fifty-five cents, does not, in my judgment, even tend to show that sixty-five cents was an unreasonable charge for passage by the train in question, for it not unfrequently happens that railroad companies are induced by a variety of reasons to charge less than reasonable rates on their regular passenger trains.

It seems to be assumed that the plaintiff was charged sixty-five cents because he had no ticket, but I am unable to find anything in the testimony to warrant such an assumption.   The plaintiff certainly does not say that the conductor assigned any such reason for making the charge.   On the contrary, the testimony of the plaintiff is this : "Soon after leaving the depot the conductor came round and asked for my fare.   I offered him the money and said that fifty-five cents was the regular price.   He said, No, it is sixty-five cents, and I said I wouldn't pay it."   Not a

word then said about tickets. The conductor did not ask the plaintiff for his *ticket*, but for his *fare*, indicating clearly that tickets were not sold for that train. Even after the plaintiff had told the conductor that he had been unable to procure a ticket as the office was not open, nothing was then said to indicate that the sixty-five cents was demanded because plaintiff had no ticket. In fact, according to the plaintiff's own testimony, all that the conductor ever said about tickets was that "he had nothing to do with the tickets, that was none of his business," and he all the time insisted that the charge he made was required by his instructions contained in a little book, which he offered to show plaintiff, but which he declined to look at. Indeed, I am unable to find anything in the testimony showing that the railway company had ever established a regulation whereby an extra charge was to be exacted from passengers failing to procure tickets, and it seems to me to be an entire mistake to look at the case in that aspect. Certainly the fact that the plaintiff on a single occasion, some ten days afterwards, was only charged fifty-five cents on the train in question, affords no evidence that the charge of sixty-five cents on the occasion in question was an unreasonable charge.

In the absence of any law fixing the rate of compensation which the defendant had a right to demand for the. service required by the plaintiff, he could only justify his refusal to pay the amount demanded by showing that such amount was unreasonable, and of this I think there was no evidence. It seems to me, therefore, that there was no error in granting the non-suit.

New trial granted.